# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| D-J ENGINEERING, INC., <br><br> Plaintiff, <br><br> v. <br><br> 818 AVIATION, INC., <br><br> Defendant. | Case No. 14-1033-JAR/JPO |
| 818 AVIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> D-J ENGINEERING., <br><br> Defendant. | Case No. 14-1126-MLB/GEB |

## MEMORANDUM AND ORDER

These consolidated cases involve a dispute between 818 Aviation, Inc. ("818") and D-J Engineering, Inc. ("D-J") concerning work performed by D-J on 818's aircraft parts. The parties have partially settled except as follows: (1) 818's claims for breach of contract, breach of the implied warranty of workmanlike performance, and negligence with respect to D-J's work on five specified parts because the work done by D-J resulted in excessive pitting, axle nut thread damage, and improper overhaul to five aircraft parts, and (2) D-J's claim for breach of contract on one purchase order for which 818 has not compensated D-J for work performed. This matter is before the Court on 818's Motion for Partial Summary Judgment (Doc. 64) on its negligence claim as to one of the aircraft parts at issue, and on D-J's claim for breach of contract. The motion is fully briefed and the Court is prepared to rule. For the reasons explained in detail below, 818's motion is granted in part and denied in part.

## I. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[1] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[6] Where the movant bears the burden of proof on a claim or defense, a more stringent standard applies. It "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."[7] If the moving party properly supports its motion, the burden shifts to the non-moving party, "who may not rest upon the mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue

---

[1] Fed. R. Civ. P. 56(a).

[2] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citing *Celotex*, 477 U.S. at 323).

for trial."[8] In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[9] If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted.[10] A party opposing summary judgment "cannot rely on ignorance of the facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."[11] Put simply, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts."[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

## II.     Uncontroverted Facts

The parties filed a Joint Status Report as to the claims remaining to be tried following their partial settlement. Pursuant to paragraph 6.3 of the parties' settlement agreement, 818 reserved claims of excessive pitting, axle nut thread damage, and improper overhaul relating to five parts, including a nose axle under Purchase Order 1643. Pursuant to paragraph 6.4 of the parties' settlement agreement, D-J reserved its claim for unpaid invoice on Purchase Order 1642, in the amount of $4,025.

---

[8]*Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir. 1993).

[9]*Adler*, 144 F.3d at 671.

[10]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994).

[11]*Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1998).

[12]*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The following material facts are uncontroverted, stipulated to for the purposes of summary judgment, or viewed in the light most favorable to D-J, the nonmoving party.

818 contracted with D-J to perform work on certain aircraft parts. Ryan Hernandez, vice-president of engineering and technical services at D-J testified that the first step in D-J's intake process for aircraft part repair is for the customer to send D-J the part together with a purchase order, requesting a quote. Because the purchase order is a document generated by the customer, it will have a purchase order number on it generated by the customer. The customer provides a description of the work to be done, and if the work is standard, D-J can price the repair sight unseen. D-J usually requests that the damaged item be provided for an evaluation and a quote if the information the customer provides is insufficient. After D-J has received the part, it provides a quote based on the assumption the part is repairable. If D-J later determines the part to be unrepairable, D-J still charges for its work processing and evaluating the part. Once the parties agree on a price, the customer provides a final revised purchase order based on that quote.

When D-J first receives a part, it performs a receiving inspection report to assess visible damage, such as damage that occurred during shipping. D-J then prepares a work plan outlining all of the work to be done to the part. The plan is reduced to a report, often referred to as "planning," and is assigned a "work order number." After all work is done, the part cannot be returned to service until D-J's mechanic provides an airworthiness certification.

818 submitted a nose axle to D-J for repair on January 15, 2013, which generated Purchase Order 1643. The nose axle received the usual preliminary visual inspection for damage, and D-J's initial inspection report documentation contains no notation of any damage. D-J accepted the nose axle for repair and assigned the part work order 1516 on that same date. On November 11, 2013, after subsequent inspection, D-J declared the part "beyond economic

4

repair," or "BER," and cancelled the work order on the basis that the nose axle was not capable of being refurbished because it was unsafe for future use. According to Hernandez's testimony, the BER determination was primarily due to metal pitting, which was concealed at the time of initial inspection by chrome paint. The BER determination was partially based on damaged threads.

D-J has not completed work on Purchase Order 1642, generated for the repair of a nose piston, and the part is still in D-J's possession. D-J has not provided an airworthiness certification on this part. Work had stopped due to ongoing litigation, but it has recommenced. D-J has not completed work on the part.

### III. Discussion

818 seeks partial summary judgment on two claims: (1) 818's claim that D-J's negligence caused damage to Purchase Order 1643, the nose axle, under a theory of *res ipsa loquitur*, and (2) D-J's claim that 818 breached its contract with D-J by failing to pay for services on Purchase Order 1642. The Court discusses each in turn.

#### A.    *818's Negligence Claim on Purchase Order 1643*

818 argues that the doctrine of *res ipsa loquitor* establishes D-J's negligence because the nose axle was in D-J's possession when the damage occurred. To establish negligence under Kansas law, a plaintiff must prove the existence of a duty, breach of that duty, injury, and causation between the breach and injury.[14] The doctrine of *res ipsa loquitur* means that the facts of the event present an inference of negligence.[15] "[N]ot that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking,

---

[14] *McGee v. Chalfant*, 806 P.2d 980, 982–83 (Kan. 1991).

[15] *Emigh v. Andrews*, 164 Kan. 732, 903 (1948) (citing 45 C.J. 1212 § 779).

5

but it is evidence to be weighed, not necessarily to be accepted as sufficient. . . ."[16] The doctrine does not dispense of the element of proximate causation, and while it infers negligence, it does not permit an inference as to what act produced the injury; "there can be no foundation of the application of the doctrine where the physical act or thing which caused the injury is unknown or not disclosed."[17] The rule of *res ipsa loquitur* applies where the plaintiff shows (1) the thing which caused the damage was, at the time of the damage, under exclusive control of the defendant, and (2) the occurrence was one which, in the ordinary course of things, does not happen if the one having such exclusive control uses proper care.[18] The inference of negligence extends to bailed property that is destroyed or damaged while in exclusive possession of the bailee.[19]

The fact that the damaged item is in exclusive possession of the bailee is essential to show negligence under a theory of *res ipsa loquitur*. In *Nolan v. Auto Transporters*, the plaintiff contracted with Nationwide to transport his Oldsmobile from California to Iowa.[20] The car was damaged in a one-vehicle collision when it was driven off the road by one of Nationwide's drivers. Because the car was damaged while in possession of Nationwide, the doctrine of *res ipsa loquitur* established Nationwide's negligence.

Here, there is a genuine issue of material fact about whether damage occurred to the nose axle when it was in D-J's possession. 818 contends that because D-J did not note any damage to the nose axle upon initial inspection and still accepted it for repair, the thread damage to the nose

---

[16]*Jesionowski v. Boston & M.R.R.*, 329 U.S. 452, 457 (1947) (citing *Sweeny v. Erving*, 228 U.S. 223 (1914)).

[17]*Emigh*, 164 Kan. at 903.

[18]*Atchison, T. & S. F. Ry. Co. v. Simmons*, 153 F.2d 206, 208 (10th Cir. 1946).

[19]*Nolan v. Auto Transporters*, 597 P.2d 614, 617 (Kan. 1976).

[20]*Id.*

axle must have occurred while it was in D-J's possession. 818 also cites expert testimony for the proposition that the damage to the nose axle is consistent with the axle being dropped from a work bench. However, this expert testimony only discusses scope of the damage to the nose axle, and does not discuss possession. 818 argues that because D-J had exclusive possession of the part and because the part was damaged, D-J's negligence can be inferred. But unlike in *Nolan*, where the plaintiff's evidence established that his automobile was damaged while in the possession of the bailee, the evidence here does not establish whether the damage to the nose axle occurred prior to, or during D-J's possession. Because res ipsa loquitor can apply only if the damage occurred while in the exclusive possession of a D-J, this issue of fact is material and precludes summary judgment.

In addition to the fact that 818's evidence does not establish negligence as a matter of law, D-J presents evidence that when viewed in the light most favorable to D-J suggests damage to the part predated its receipt. First, D-J points to Hernandez's testimony that initial inspection is typically used only to detect readily-ascertainable damage incurred in the shipping and handling process. Hernandez describes this type of damage as "a situation where the shipping carton was run over by a truck, or a forklift went through the container so that the part is not in the condition the customer intended for D-J to receive it."[21] This evidence is sufficient to demonstrate a genuine issue of material fact about whether the initial inspection is sufficient to detect the type of damage on the nose axle, or whether it would only be discovered later during a "full inspection."

Second, D-J points to Hernandez's testimony that magnification may be necessary to detect thread damage, depending on the nature of the damage. Because the initial intake

---

[21]Doc. 71 at 5.

inspection is only a naked-eye visual inspection, D-J argues that the thread damage may not have been detected until later on in the repair process. The Court agrees that this evidence demonstrates a genuine issue of material fact about whether the thread damage to the nose axle was detectable by the naked-eye, and ultimately whether D-J would have discovered such damage during its initial visual inspection.

Finally, while D-J admits that the nose axle was designated as BER in part because of damaged threads, it received the BER designation primarily due to excessive pitting damage. D-J contends such pitting was concealed by chrome paint during the initial intake inspection. D-J points to the fact that chrome paint was covering the pitting damage, preventing it from being detected upon initial visual inspection, and was only discovered when the chrome was removed during the repair process. D-J further argues that 818 does not attempt to prove this pitting was caused by D-J. Although 818 argues this fact is immaterial because the part was deemed BER partially due to the thread damage, it is not clear from the summary judgment record what percentage of thread damage caused the BER status, and what percentage was caused by pitting. Therefore, it is a genuine issue of material fact whether thread damage alone would have made the nose axle BER, and whether the pitting damage concealed by chrome paint during the initial inspection is relevant to this claim.

Given the genuine issues of material fact over when damage to the nose axle occurred and ultimately whether D-J is liable for that damage, 818's motion for summary judgment denied. 818 has not established as a matter of law that *res ipsa loquitur* applies to infer D-J's negligence.

### B. D-J's Claim for Breach of Contract on Purchase Order 1642

818 also moves for summary judgment on D-J's claim for breach of contract on Purchase Order 1642 because D-J failed to set forth facts that show defendant 818 breached the contract, an essential element to establish breach of contract. The elements for a breach of contract claim under Kansas law are: (1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff suffered damage caused by the breach.[22]

Viewing the evidence in the light most favorable to D-J, there is no evidence that 818 breached the contract. While D-J contends that work was only stopped on Purchase Order 1642 due to litigation as Hernandez testified, it is uncontroverted that payment was not due until an air-certification was provided. Because an airworthiness certification was not provided here, payment from 818 is not due, and 818 could not breach its contract by not making a payment on the part.[23]

D-J offers two arguments in response to 818's motion for summary judgment, but neither rebuts 818's claim that it never breached its contract. D-J first argues that summary judgment on this counterclaim is premature given the fact that service on the part would be completed before the December 5, 2017 trial date. But the timing of trial in this case does not show that 818 breached its contract in the first place. D-J also points to the fact that 818 twice moved to set aside the partial settlement agreement, and was twice ordered by the Court to comply with it. However, this fact does not demonstrate breach. D-J fails to meet its burden of production by

---

[22]*Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1135 (D. Kan. 2010).

[23]*Id.*

failing to offer any facts to create a genuine issue of material fact over whether 818 breached its contract.

Given D-J's inability to bring forward specific facts to refute 818's claim that it did not breach its contract, 818's motion for summary judgment regarding D-J's claim of breach of contract is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant 818 Aviation's Motion for Partial Summary Judgment (Doc. 64) is GRANTED IN PART AND DENIED IN PART.  The motion is granted as to D-J's claim for breach of contract; it is otherwise denied.

**IT IS SO ORDERED.**

Dated: August 1, 2017

                                                  S/ Julie A. Robinson
                                                  JULIE A. ROBINSON
                                                  UNITED STATES DISTRICT JUDGE